Good morning, Your Honors. May it please the Court. Your Honors, Petitioner in the instant case organized a workers' demonstration outside the Shanghai City Hall in 1999 solely for the purpose of addressing safety issues and inadequate compensation at his factory. For so doing, at the demonstration, he was struck by three policemen and knocked to the ground. He was arrested for failing to obtain a permit to demonstrate. However, during interrogations, the Petitioner was accused of disturbing the Social Security and trying to overthrow the government. Counsel, before you get too far in, I have a threshold question to ask you. As I look at the record, it appears that the withholding issue was never raised before the BIA. The appeal only raised asylum. According to our law, it appears to me that we don't have jurisdiction to even consider the withholding issue. Since it wasn't raised at the BIA, it can't be before us. It looks like. Would you like to address that? Yes, Your Honor. Certainly, it was the intention of Petitioner to raise that issue. Well, I don't think intent counts for very much. He didn't raise it. It was only asylum that was raised. I don't have the BIA brief specifically at my disposal at the moment. Trust me. Let's assume that withholding was not put to the BIA, period. Our case law says if you don't put withholding to the BIA, you can't raise it here. What do we do with that? Your Honor, I would point this out to the Court, if I may. The application, which is certainly part of the record. Surely. And certainly submitted and part of the record on all appeals did, in fact, specifically identify withholding. Not only that, but because the one-year issue was really not in contention and, in fact, the one-year issue was really not even challenged on the BIA level, certainly the whole point of the brief that was addressed to the BIA had to be withholding specifically and not asylum. Okay. So I guess you'd say, well, wherever we said asylum, we really meant withholding. The BIA should have known that, and therefore, when it ruled, it ruled on withholding, and therefore, the issue is properly here. That would be your argument. Is that right? I would certainly assert to the Court that withholding was the specific point of the appeal that was addressed to the BIA. But, you know, withholding has slightly different standards and sort of a different argument, and the oral argument was talking only about asylum. But anyway, your argument would be it must have been withholding, and therefore, you've got jurisdiction, right? I believe just so, Your Honor. Thank you. So on the merits, why is this prosecution and not persecution? That seemed to be the holding of the IAJ that this can't be considered persecution on account of an enumerated ground because your client was in violation, arguably, of the law, and therefore, this was a criminal activity. What's your response to that? I certainly agree, Your Honor, that that is specifically the issue before the Court today. I would like to address that issue specifically on the relevant cases, and I would even concur with the standard that we set forth and even also the government brief in response concurred with. The standard that was set forth is the Ninth Circuit case of Fisher v. INS, which states that the criteria for distinguishing prohibited persecution from mere prosecution is disproportionately severe punishment and pretextual prosecution. And we would certainly assert, Your Honor, that the facts in this case definitely qualify as disproportionately severe punishment. It wasn't pretextual, though, right? I'm sorry, Your Honor? It wasn't necessarily pretextual, though, right? I believe it was pretextual. Well, I thought... I believe that all of the facts would go to the fact that it was pretextual. Perhaps... And the cases that were cited in the brief that was filed with the Court, each of those cases, and there were at least three cases which we cited to the Court, each of those  But the fact is that the treatment of the prisoner, it became apparent that the treatment of the prisoner went far beyond just the lawful arrest and the... You don't have to go that far to prevail today, do you, in your opinion? I don't believe we do, Your Honor. And so... But certainly if we did need to go that far, I believe this case would definitely qualify. He might have a more appealed battle because he was violating the law, wasn't he, Holmes Digger? No, Your Honor. If I may address that issue... No, you may not like the law, and you may argue that it's not right, but it's pretty clear it was known and he was doing it. I admit that he apparently was aware that... And pretextual usually, it's not... There's no basis. They manufacture a basis. But all right, go ahead with your argument. If I may address that specific issue, Your Honor. The petitioner's testimony himself, which the judge in the immigration court found credible, the petitioner testified, if I had applied for it, referring to the permit, it definitely would have been turned down. The petitioner further testified, it was the doing of the Chinese government all the time, although always announced, and this is his poor English, always announced that people have freedom of speech and action. Actually, they never existed. Well, that's an interesting thing. When he says that and he's credible, are his legal opinions to be given credibility on the basis that he's credible? We hear that a lot of times in cases in this country. For instance, well, I didn't bother applying for the permit because they'd have turned me down. And that's kind of what he's saying. I didn't bother applying for a parade permit because they'd have turned me down. That is what he was saying, Your Honor. That's what he said. Now, is that an issue of fact that you give him credibility for? Or is that really just sort of a legal argument he's making? I believe it is an issue of fact that we give him credibility for. But not only did he state that specifically in his testimony more than one occasion, but the State Department country condition report that the government itself submitted as evidence in this case specifically states that also. It states at page 16 of page 66, under the heading Freedom of Peaceful Assembly and Association, I quote, and this is the State Department report regarding China, the Constitution of China provides for freedom of peaceful assembly. However, the government severely restricts this right in practice. It goes on to say, authorities deny permits and quickly move to suppress demonstrations involving expression of dissenting political views. At times, police used excessive force against demonstrators. Demonstrations with political or social themes were often broken up and quickly and violently. So you see, Your Honor, that was not just the petitioner's specific opinion in this case, but our own government finds that that is specifically the practice by the government of China. So indeed, that is a credible assessment of what happened. Do you want to save some time for rebuttal? I'd like to very briefly address one other issue, Your Honor. Very briefly, the other issue involved here was the immigration judge's finding that this particular practice, even if it constituted persecution, didn't fall under one of the five protected grounds. I would again refer to what happened at the interrogation. The police arrested this man allegedly for not obtaining a permit, but when they took him to the police station, did their interrogation deal with the permit? No. No. They accused him of trying to overthrow the government. I can't conceive of how you would find any more of a political opinion case, either specific political opinion on the part of the petitioner or imputed political opinion on the part of the petitioner. I can't imagine how you would find more specifically that this was, in fact, protected under political opinion on that ground. Thank you, Your Honor. Thank you, counsel. We'll hear from the government. Mr. Goldman. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General. This Court should uphold the agency decision and deny the petition for review. If this Court does get to the merits of the claim, this case is about prosecution. It was a prosecution, a legitimate prosecution for failure to obtain a permit for a demonstration. Was he ever prosecuted? He was accused. He was arrested. He was never prosecuted, was he? I don't believe the record is specific that formal charges were brought. He was accused of demonstrating without a permit. That's right. He was arrested, but he was never prosecuted. And under Singh, isn't there a presumption that arises, if you are not ultimately prosecuted for a crime, that it may be considered pretextual? Your Honor, that's true. The question in this case, and I think the Court's found the issue in this case, is was this a pretextual situation? In this case, he was arrested for demonstrating without a permit. He was detained for demonstrating without a permit. He was questioned. He was for demonstrating without a permit. And ultimately, he was punished for demonstrating without a permit. Well, was he? He was certainly punished. He was never charged. Nobody said you have to send to a labor camp. And you would be just fine, except for the statements that you're trying to overthrow the government, and those were clearly politically directed. Why don't those statements indicate that this falls within the pretextual prosecution? Because obviously, demonstrations, and there are all sorts of laws that can be applied to stop peaceful protests. And we have to look very carefully at whether those are pretextual or not. If you just quizzed about that and saying, we're rounding you up, you violated and you demonstrated without a permit, fine. But when then it takes it to the next level, you said you're trying to overthrow the government, he gets abused there, and then sent off to prison. Well, of course, it's a different context, perhaps, in China, but I think in the normal context, we think, well, they have to reorient your political views. I think the answer is certainly the case would be a lot easier for the government if those questions were never asked about trying to overthrow the government. But the question before this Court, and under the standard of review that this Court has to look at this case through, the question is not whether there's some evidence or another possible conclusion that there was a political element to this. The question is, does the evidence compel that conclusion? And obviously, I can't stand here and say that there was no question asked about politics. There was. Mr. Liu was found credible. He says he was asked about overthrowing the government. But he was also asked a lot of questions, and as he testified, who's behind you? Who's setting up this demonstration? Why are you demonstrating? And he was arrested for demonstrating without a permit. He was detained for demonstrating without a permit. But the question then is, was it reasonable for the immigration judge to conclude that's why he was arrested and prosecuted? And the government would submit that on all of that evidence, that was certainly a reasonable conclusion. It's certainly possible. The immigration judge certainly could have said, you know what? As Your Honor suggested, you got reeducated. You were asked these questions. You know what? This was pretextual. But that's a possible conclusion that the immigration judge could have reached. The evidence in this case doesn't compel the conclusion that that's what was going on in this case. You know the difficulty, though, Mr. Goldman? As I understand it, your argument, you want us to ignore the record. Not at all, Your Honor. Well, we see what happened, don't we? Your Honor, first of all, I would absolutely not want the Court to ignore the record. But the question the question Let me state it in a way that you might understand it. The question for us is, does it compel a different conclusion? In order to decide whether it compels a different conclusion, we have to look to see what happened. Yes. And when we look to see what happened, we see the points that Judge Thomas was discussing with you. Absolutely, Your Honor. And when we see that, then how do we say, oh, this was just he was arrested for and the charge, everything that flowed after the arrest had to do with the stated reason for the arrest.  Absolutely. But the other evidence that's in the record, and the government's point there is that the other evidence that's in the record is that he knew he had to get a permit. He didn't get a permit. He demonstrated without a permit. He was arrested, picked up, detained because he demonstrated without a permit. So that evidence is also in the record. No, that's a conclusion. The last point you made was a conclusion. That he was It's not a fact. He indicated that he was questioned about demonstrating without a permit. Your last statement was he was picked up and arrested because he was demonstrating without a permit, and that is a conclusion. Well, particularly the State Department report that indicates that the government's suppressing peaceful protests. Yes. I think the problem with that, Your Honor, is that the facts in this case are not consistent with the State Department report. If Petitioner would have this court believe that there's no demonstrations allowed, there's absolutely no freedom of speech, the facts in this case belie that, where Petitioner, Mr. Liu, was allowed to bring 300-some people to a government office, demonstrate for the better part of a day. What the State Department report would indicate was that, you know, the minute you show up to demonstrate, the police show up, they quash that demonstration. That's not what happened here. That might be just slow law enforcement. You never know. I think, you know, not to The problem I have with this case is that so far, so good if you're rounding up people at a demonstration. I know it's dangerous to provide an overlay in a foreign country of experience in the United States, but if they just picked him up and said, you're arrested, and here's the prosecution, and you're free to go, whatever. But what happens after that, you're beaten. Who's behind this? You're trying to overthrow the government. You need to be reeducated. It does start to, it may take a, what, a facially plausible prosecution for a rather petty offense, I suppose, and then transform it into a persecution on account of political opinion. And I know you cite that, the dialogue where they're asking him who's behind it, but why would that be relevant to the fact that he was demonstrating without a permit? That should have been in the end of the inquiry unless you're trying to find out and suppress political dissent. I mean, that's the argument. I'm not quarreling with you. I'm just Certainly a possible argument, Your Honor, and it comes back to Mr. Liu's burden before this Court to show that the evidence, as was noted, compels a different conclusion. And again, I can't stand here and say there's no evidence that there was some element of politics. A couple points in response to your question, though, the government would also submit that the actual mistreatment that occurred in this case did not rise to the level of persecution. Persecution is an extreme concept. The harm in this case, while not to be condoned, simply did not rise to the level of certainly some of the other cases that even Mr. Liu cites where people were detained for much longer periods, beaten much more severely. Mr. Liu was slapped, kicked. Again, the government doesn't condone that in any way, but it didn't rise to the level of persecution. And what's the question? What's the pivotal question we must answer when we decide whether we agree with you or whether we don't? Don't we just look to see, was it excessive? That's yes. Yes, Your Honor. And in this case, compared to the other cases that even Mr. Liu cites, government would submit that it was not excessive. And I think the question was asked earlier, what more could have been shown? I think the answer is if Mr. Liu had come into the immigration court and said, yeah, they brought me downtown for demonstrating without a permit, but the minute I walked in the door, they made it very clear that they were after me politically. And that's not what happened in this case. He was questioned about why he was demonstrating without a permit. If he had testified that he was specifically sent to that labor camp because of political reasons, but he didn't do that, that's the kind of evidence that would certainly make the government's case a lot harder, but it's simply not in this record. But he was sent to a labor reeducation camp for two months, so he was detained away from his job and his family for two months. You can't just say he was only in prison or in the jail for a couple of days and ignore the labor reeducation camp. Absolutely, Your Honor. My only point there is that the specific reason, it's not like this record has charging documents or anything like that that would make it real clear. Well, there are no charging documents. That's the problem. He was imprisoned or taken away, depending on how you view the labor reeducation camp, without being charged ever for the offense to which you're tying your defense. But again, the government's response to that, Your Honor, is that he could have testified. Even if there's no documents to support what he's saying, he was found credible. He could have come into court and said, you're being sent to a labor reeducation camp because of your politics, not a worker's state issue. I don't mean to crawl with you, but people rarely say, I'm here persecuting you on one of the enumerated grounds in the INA. I mean, the persecutors don't say that. I would agree. They don't come in and make legal conclusions. But I would submit that there are certainly cases where they go into court, into the immigration court, and they say, I was detained, I was questioned for political reasons, I was told, you're being sent to a labor reeducation camp for political reasons. They do say that. Mr. Lew didn't say that. And that's where one of the reasons why his case fails in this case, Your Honor. Thank you. Your time has expired. Any further questions from the panel? Thank you, Your Honor. Very helpful. Thank you both for your arguments. The case just heard will be submitted.
judges: Farris, Fernandez, Thomas